(No. 47199.-)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. BARBARA SUE NYBERG, Appellee.

*Opinion filed October 1, 1976.*

KLUCZYNSKI and GOLDENHERSH, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon, John F. Brennan, and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, and Mary Therese Woodward (law student), of counsel), for appellee.

PER CURIAM: Defendant, Barbara Sue Nyberg, was indicted for the murder of her 4½-month-old son. After two days of a bench trial in the circuit court of Cook County, defendant entered a plea of guilty to voluntary manslaughter and was sentenced to a term of 5 to 20 years in the penitentiary. Defendant appealed, and the appellate court, with one judge dissenting, reversed the judgment of the circuit court and remanded the cause with directions to allow defendant to plead anew. (*People v. Nyberg,* 24 Ill. App. 3d 41.) The appellate court found that there was no factual basis to support the plea of guilty. We granted the State leave to appeal in which it maintains that the trial judge was correct in finding a factual basis for defendant's guilty plea.

The following facts were adduced at defendant's bench trial. On June 3, 1971, defendant, who was 22 years old, resided with her parents and her two children. She was married but separated at that time. At approximately 8 a.m. that morning, defendant was visited by her 17-year-old boy friend, who had earlier been drinking wine. From 8 to 8:30 a.m. defendant consumed two glasses of an alcoholic beverage and prepared the infant's formula. Defendant and her boy friend then proceeded to the upstairs bedroom to feed the infant. She merely placed the

baby's bottle near the child's mouth. There were conflicting statements as to whether the infant showed any signs of life at that time.

After engaging in sexual intercourse with the defendant in a downstairs bedroom for a portion of the morning, the defendant's boy friend left the home at approximately 12:30 p.m. Each claimed that the other was alone upstairs with the infant at some time during the morning. After her boy friend had left, defendant discovered that the infant was "unconscious." The police were notified, and when they arrived they found the infant "stiff" and "very pale." The infant also had two marks on its head. At 1:50 p.m. the child was pronounced dead. The infant had been seen alive by defendant's father between 5:30 and 6 a.m. that same morning. There were no other marks or traces of blood on the baby's body, and no one saw defendant strike or hit the infant. Defendant was alone with the two children from 7 to 8 a.m., and the only other person known to have entered the home that morning was defendant's boy friend. Defendant made two separate statements to the police in which she failed to mention that her boy friend was present at her home that morning. Only during her third interview did she inform the police of this fact. On two separate occasions, in the presence of others, defendant stated that she "did it," but later she retracted these statements contending that the only reason she confessed was to get her boy friend "off the hook."

Prior to trial, defendant underwent extensive psychological testing, and the results were made part of the record by the trial judge. The tests indicated that defendant was passive and in the dull normal range of I.Q. She was, however, competent to stand trial, able to understand the purpose of the proceedings and cooperate with her attorney.

After entering her not guilty plea, a hearing was held March 1, 1972, on defendant's pretrial motion to suppress evidence. The report of proceedings indicated that the trial

court ruled that certain physical evidence was suppressed, specifically the crib and the attached rod, which were acquired without a warrant. However, the common law record contains an order entered on March 1, 1972, denying defendant's motion to suppress physical evidence and to suppress statements. The order does not state that any physical evidence was suppressed. The State's case in chief commenced May 18, 1972, and on the following day the court held a hearing on defendant's motion to suppress the statement "I did it," which she allegedly made on June 4, 1971. Defendant's motion was denied, and the case was continued until May 22, 1972. The State's Attorney informed the court that on May 22, 1972, Dr. Kearns of the coroner's office would testify. However, the next proceeding, according to the record, was not held until June 29, 1972, at which time a hearing was held on defendant's change of plea. The record does not show any testimony given by Dr. Kearns.

The State raises only one issue on appeal. It maintains that a factual basis for a guilty plea may be made "off the record" and that proof of a criminal agency need not be shown as part of a guilty plea. Supreme Court Rule 402(c) requires the court to determine that a factual basis exists before entry of final judgment on a guilty plea. (*People v. Warship*, 59 Ill. 2d 125.) The means of inquiry utilized by the trial court shall be determined on a case-by-case basis. Its search is not restricted only to what is in the record, but it may use any means at its disposal which will satisfy its inquiry as to whether or not a factual basis exists. See 58 Ill. 2d R. 402(c), Committee Comments.

In the instant case, there were several days of testimony, including two days of trial in which the trial court heard the major portion of the prosecution's case in chief before the defendant offered her plea of guilty. Testimony was received which showed that defendant, on two separate occasions, stated "I did it." Also, conferences

were held among the judge, defendant's attorneys and the prosecutor during the time period between the last day of trial and the day of the hearing on the change of plea. At that hearing, the court stated:

"So based on all these hearings in and out of chambers, whatever was said here today, there will be a plea of guilty, finding of guilty, judgment on the finding."

Considering this wide, exposure to information that the trial court had, we would be hesitant to overrule that court's determination that a factual basis for a plea of guilty existed unless the facts and circumstances of the case clearly showed that it did not exist. "The quantum of proof necessary to determine if there is a factual basis for the plea is less than that necessary to sustain a conviction after a full trial." *(People v. Arnold,* 18 Ill. App. 3d 95, 98.) Therefore, we affirm the trial court's finding that a factual basis exists.

On her appeal to the appellate court and before this court, defendant maintains that the trial judge erred in that he did not personally inform her of and did not determine that she understood the nature of the charge. In our recent decision in *People v. Robinson,* 63 Ill. 2d 141, 145, we stated that the requirements of Rule 402(a)(1) are two-pronged. Not only must the court inform the defendant of the nature of the charge, it must also determine that the defendant understands the nature of the charge. We further held that when defendant is represented by counsel and enters a plea of guilty pursuant to a plea agreement it is appropriate to inform him of the nature of the charge by naming the offense. *(People v. Robinson,* 63 Ill. 2d 141, 146.) In the present case the judge personally informed the defendant of the nature of the charge in the following colloquy:

"Q. You know what you are charged with. You are charged with murder which, in Illinois, demands a minimum 14 year sentence, but that if you plead guilty to a lesser charge of voluntary manslaughter, that carries a

> sentence of 1 to 20 years. And then if you plead guilty knowing all this, this court would sentence you from 5 to 20 years. *** Do you understand that?
>
> A. Yes."

This admonishment substantially complies with the first part of the two-pronged test. In determining whether the trial court substantially complied with the latter part of the test, the entire record may be considered. (*People v. Krantz,* 58 Ill. 2d 187, 192; *People v. Robinson,* 63 Ill. 2d 141, 146.) At the change-of-plea hearing in the present case defendant's attorneys informed the court that they discussed the case, and particularly, the plea of guilty with defendant, her mother and father, and her minister. It is also shown that the trial judge carefully and in simple terms admonished defendant, pausing often to ask if she understood his explanation. The judge declared in the record: "I'm quite sure she understands everything." We find that this adequately meets the substantial compliance standard of Rule 402. See *People v. Hardaman,* 59 Ill. 2d 155, 157; *People v. Krantz,* 58 Ill. 2d 187, 193.

Accordingly, the judgment of the appellate court is reversed.

*Judgment reversed.*

MR. JUSTICE KLUCZYNSKI, dissenting:

I must respectfully dissent from the majority's opinion.

One of the issues presented in this appeal is whether the trial court was correct in finding a factual basis for the guilty plea. I agree with the majority's principle that a reviewing court should defer to the trial court's determination that a factual basis for a plea of guilty exists unless the facts of the case show otherwise. However, during the State's recital at the change of plea hearing, the prosecutor stated that Dr. Kearns from the coroner's office had testified. Ordinarily the purpose of having a pathologist testify at a criminal proceeding involving a criminal charge of murder or manslaughter is to show that the

death of the victim was caused by a criminal agency. The record in the present case is devoid of any such testimony. The State did not relate what the doctor's testimony would have been if he had been allowed to testify, but claimed that he had testified. Based on that alleged testimony, and other witnesses' testimony, stipulations and facts, the State maintained that a factual basis existed. I cannot determine how heavily the trial judge relied on the doctor's alleged testimony in his factual-basis analysis. If this were the only consideration, I would vacate the judgment and remand the cause to the trial court with instructions to reconsider whether a factual basis exists in light of the State's misrepresentation. (See *People v. Galloway,* 59 Ill. 2d 158, 164.) However, the factual-basis determination was not the only contested issue before this court.

Defendant maintains that the trial judge erred in that he did not personally inform her of and did not determine that she understood the nature of the charge. As stated by the majority, Rule 402(a)(1) requires that the court shall not accept a plea of guilty without first addressing the defendant personally in open court, informing her of and determining that she understands the nature of the charge.

Paragraph (a)(1), coupled with paragraph (e) of the same rule, which applies to the present case, require that the common law record reflect that the trial court admonish the defendant. The majority, quoting the trial court's colloquy at defendant's change of plea hearing, claimed that this admonishment meets the first part of the two-pronged test expressed in *People v. Robinson,* 63 Ill. 2d 141, 145. I find that this merely informed defendant what sentence she could expect if she pleaded guilty to a lesser charge of voluntary manslaughter. This charge is not the one that was stated in the indictment, and this hearing is the first proceeding in which it is mentioned. It is an offense that deserves further explanation if a defendant is to be informed as to the nature of the charge. Also, the

record fails to show that the judge adequately determined that the defendant understood the charge. In *McCarthy v. United States,* 394 U.S. 459, 470, 22 L. Ed. 2d 418, 427, 89 S. Ct. 1166, which involved construction of Federal Rule 11, a rule comparable to Rule 402, the United States Supreme Court stated:

> "There is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him."

At the plea of guilty hearing, defendant's attorney stated:

> "She [defendant] says she could not have murdered her child. She says the only way in which she could have possibly harmed her child would have been if her child had provoked her or did something to make her angry."

This statement given in support of defendant's plea of guilty was, at best, ambiguous. It was too contingent and indefinite for any determination that defendant understood the nature of the charge. Since the discrepancy between the possible meaning of defendant's statement and her purported plea was significant, the court should have refused the plea.

Considering the doubt as to the existence of a factual basis and the inadequacy of the admonishment of defendant, as shown by the inconsistency between defendant's plea and her statement supporting her plea, I would hold that the trial court substantially failed to comply with Rule 402.

In a recent United State Supreme Court case, *Henderson v. Morgan,* —— U.S. ——, 49 L. Ed. 2d 108, 96 S. Ct. 2253, defendant was indicted for first degree murder. Although defendant was substantially below average in intelligence, he was found to be competent to stand trial. The indictment was read in open court which charged that he wilfully stabbed his victim. The two able attorneys that represented him held a series of conferences with the prosecutors, the defendant and members of his family and

sought to have the charge reduced to manslaughter, but the prosecutors would only agree to a second degree murder charge.

At the plea of guilty hearing defendant stated that his plea was based on the advice of counsel, that he understood he was accused of killing the victim, that he was waiving his right to a jury trial, and that he would be sent to prison. The Supreme Court found that defendant's plea of guilty to a charge of second degree murder was made without informing him of the elements of the offense to which he pleaded guilty and that there was no indication that the nature of the offense had ever been discussed with him. Accordingly, the Supreme Court held that a plea cannot be voluntarily made, and fulfill the requirement of due process, unless defendant received "real notice of the true nature of the charge against him." (—— U.S. ——, ——, 49 L. Ed. 2d 108, 114, 96 S. Ct. 2253, 2257.) An admission by defendant that he killed the victim does not necessarily admit that he was also guilty of second degree murder.

The facts in *Morgan* are similar to the facts in the case before us. Nyberg was also of below average intelligence. Although she was found competent to stand trial, the court found it necessary to have the results of psychological testing of the defendant made part of the record. I believe this undermines the importance the majority opinion places on the fact that the defendant's attorneys discussed the case at a meeting with defendant, her parents and clergy. The record does not demonstrate that defendant gained any insight or understanding, at the time of the plea of guilty hearing, as to the nature of the reduced charge of voluntary manslaughter, as a result of these meetings. The record does not show that the trial judge, in open court, explained the elements of voluntary manslaughter and inquired whether defendant knew the charge to which she was entering a plea of guilty. Although the majority states that the trial judge admonished

defendant carefully and in simple terms, I find that the record reveals that the court was diligent only in informing defendant that she would waive a jury trial and that she could expect a sentence of 5 to 20 years when she entered her guilty plea. The court's opinion refers to the fact that defendant's attorneys discussed the plea of guilty with defendant, her family and clergy, but, for the above-stated reasons, I find that this does not meet the requirement of Rule 402(a) that defendant be admonished in open court as to the nature of the charge. Nor does it show that defendant received "real notice of the true nature of the charge" against her. I would affirm the appellate court judgment and allow defendant to plead anew.

MR. JUSTICE GOLDENHERSH, dissenting:

Although I agree with Mr. Justice Kluczynski's dissenting opinion I wish to add a brief additional comment. The essential elements of a criminal homicide are the fact of death and that death was produced by a criminal act. (*People v. Garrett*, 62 Ill. 2d 151.) I have searched the record in vain for any evidence of the second element. I agree with the appellate court that "From all that appears in the record, the infant may have succumbed to 'sudden unexpected crib death' ***." (24 Ill. App. 3d 41, 49.) In short, there is nothing in the record to support the finding required by Rule 402(c) "that there [was] a factual basis for the plea." I would affirm the judgment of the appellate court.